UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JENICE GOLSEN-DUNLAP,           )
*Trustee in Bankruptcy for the Estate*   )
*of Timothy Wardrop*,            )
                                )
            Plaintiff,          )
        vs.                     )        1:04-cv-00104-LJM-DKL
                                )
ELAN MOTORSPORTS               )
TECHNOLOGIES, INC.,            )
                                )
            Defendant.          )

## ORDER

Pending before the Court are the parties' motions for summary judgment ("Motions"): Defendant's, Elan Motorsports Technologies, Inc. ("Defendant"), Motion for Summary Judgment [Dkt. No. 232], and Plaintiff's, Jenice Golsen-Dunlap, Trustee in Bankruptcy for the Estate of Timothy Wardrop ("Plaintiff"), Motion for Summary Judgment [Dkt. No. 234]. The Court has considered the parties' submissions and rules as follows.[1]

## I.  BACKGROUND[2]

This case involves a contract dispute between Defendant, a manufacturer and seller of Indy Car chassis, and Plaintiff, bankruptcy trustee for Timothy Wardrop ("Wardrop"), one of Defendant's former employees. In 1999, Defendant marketed its products under the G Force trade name among Indy Car race teams. *See* dkt. no. 235-13 at 3. Wardrop was

---

[1] Also pending are Plaintiff's two requests for oral argument on the Motions [Dkt. Nos. 239, 243]. The Court concludes that it has sufficient information to decide the Motions without argument and, therefore, **DENIES** both requests.

[2] Defendant stipulates to certain facts for the purpose of summary judgment only.  Dkt. No. 233 at 4 n.1.

a well known and respected Indy Car engineer who had worked with numerous Indy car teams, including the 1997 Indianapolis 500 winning team of Arie Luyendyk ("Luyendyk"). Dkt. Nos. 235-10 at 3; 235-12 at 5.  In 1999, Wardrop was employed as an engineer with Treadway Racing ("Treadway").  Dkt. No. 235-10 at 3.

In May 1999, a meeting occurred at the Indianapolis Motor Speedway between Wardrop, Fred Treadway, and Dan Panoz ("Panoz").  *Id.* at 4.  Panoz was in the process of purchasing Defendant and related corporate entities, and Fred Treadway recommended that Defendant employ Wardrop because of Wardrop's race engineer experience.  *Id.* Panoz agreed to take on Wardrop's salary payments from Treadway for the rest of 1999 until a more formal employment agreement was put into place.  *Id.*

In June 1999, Wardrop and Panoz, along with Dave Cooper ("Cooper"), United States sales manager for G Force, had a meeting in Georgia to discuss Wardrop's employment with Defendant.  Dkt. Nos. 233-1 at 5; 235-11 at 5.  According to Wardrop, Panoz proposed to give Wardrop a ten percent commission on sales in addition to salary, as well as "future share options possibly."  Dkt. No. 233-1 at 5.  Panoz denies making any representation as to commissions.  Dkt. No. 244-2 ¶ 2.  Panoz also agreed to allow Wardrop to maintain his engineer relationship with Luyendyk if Luyendyk decided to compete in another Indianapolis 500.  Dkt. No. 233-1 at 5.  In addition, Defendant would construct a wind tunnel and a seven post shaker for car testing.  *Id.*  The results of this meeting were not memorialized in writing, and Panoz delegated negotiation of the details of the agreement to others.  *Id.* at 8.  However, Defendant issued a press release drafted by Cooper announcing the contract between Wardrop and Defendant.  Dkt. No. 235-11 at 5, 8.  Defendant began reimbursing Treadway for Wardrop's salary payments.  *See*

2

*generally* dkt. no. 235-9.

Following the June 1999 meeting, Wardrop enlisted the help of business associate Steven Keeler ("Keeler") to negotiate a written agreement between Wardrop and Defendant to begin in 2000.  Dkt. No. 233-1 at 20–21.  Wardrop authorized Keeler to negotiate with Defendant on his behalf.  *Id.* at 21.  Keeler described his role as discussing "all the issues that were on the table: salary, tenure, bonuses, commissions, those kind of things."  Dkt. No. 233-2 at 11.

Throughout late 1999 and early 2000, Keeler negotiated with Defendant's various representatives, including Jeff Hazell, Ralph Firman ("Firman"), and Hamish Burton ("Burton").  *Id.* at 11, 62.  Keeler drafted a document that was circulated between Keeler and Defendant's representatives a number of times, undergoing numerous revisions.  *See generally* dkt. nos. 233-3–233-9.  Throughout the negotiations, commissions, bonuses, and other means of compensation were discussed.  *Id.*

On February 1, 2000, Wardrop signed a document resulting from the negotiations between Keeler and Defendant's representatives.  Dkt. No. 1-1 at 7–8.  This document provided for Wardrop's employment during a twenty-four month period beginning on January 1, 2000.  *Id.* at 7 ¶ 1.  Wardrop was to be paid a $300,000.00 salary for the first twelve months of the agreement with a cost of living increase in the second twelve months. *Id.* ¶ 2.  Defendant would provide Wardrop with a vehicle, corporate credit card, and travel expenses.  *Id.* ¶¶ 3–4.  The document further provided that "[a]s part of a bonus incentive program, [Defendant] will offer Wardrop a company share package to by determined and detailed in an addendum to this agreement."  *Id.* ¶ 5.  The document does not mention commissions.  Firman signed the document on behalf of Defendant.  *Id.* at 8.

3

Beginning in approximately May 2000, Defendant failed to reimburse Wardrop for his expenses. Dkt. No. 233-1 at 29. On September 27, 2001, Wardrop sent an email to Defendant's personnel regarding issues about his contract that he found "disconcerting," including the failure to pay expenses and commissions, as well as the lack of share options. *Id.* at 78. On or about November 20, 2001, Keeler sent an email to Wardrop regarding the status of new contract negotiations for 2002 forward. Dkt. No. 233-2 at 87–91. Defendant had ceased Wardrop's salary payments to Treadway prior to Keeler's November 2001 email, although "it was implied" to Keeler that salary payments would resume upon agreement on a new contract for 2002. *Id.* at 91. Keeler indicated in the email that he believed Defendant to be in breach of its contract with Wardrop; in Keeler's words, Defendant "ha[d] not lived up to [its] agreement[.]" *Id.* at 93.

Despite Defendant's failure to pay commissions, salary, or certain expenses, Wardrop continued to work for Defendant. *Id.* On approximately December 15, 2001, Wardrop sent an email to Firman regarding the missed salary and expense payments. Dkt. No. 233-1 at 36–37. Wardrop stated that he felt Defendant was "running rough shod over a legally-binding contract." *Id.* at 40. Wardrop declined to sign a new contract and terminated the employment relationship in 2002. Dkt. No. 235 at 21.

On December 15, 2003, Wardrop filed suit against Elan Motorsports Technologies Racing Corporation ("Elan Corp") in Marion County Superior Court for violations of the Indiana wage statute and breach of contract. Dkt. No. 1-1. In January 2004, the suit was removed to this Court. *Id.*

On November 10, 2005, following briefing by the parties, the Court issued an Order on Summary Judgment ("2005 SJ Order"). *See generally* dkt. no. 53. The Court dismissed

4

Wardrop's wage claim.  *Id.* at 7 n.1.  In addition, the Court concluded that a single employment agreement ("Employment Agreement") between Wardrop and Defendant existed, consisting of both oral and written provisions and subject to a two-year statute of limitations.  *Id.* at 7.  The Court further concluded that a genuine issue of material fact existed as to when Wardrop should have known that the Employment Agreement had been breached.  *Id.* at 6.  On December 19, 2005, the Court upheld the 2005 SJ Order and clarified that the statute of frauds did not apply to the oral provisions of the Employment Agreement.  Dkt. No. 58.

On September 9, 2008, Wardrop filed for bankruptcy.  Dkt. No. 127-1.  Plaintiff was substituted as the real party in interest.  Dkt. No. 133.  Shortly before trial on Plaintiff's breach of contract claim was to begin, Plaintiff sought leave to file an amended complaint naming Defendant, rather than Elan Corp, as the correct defendant.  Dkt. No. 157.  The Court denied Plaintiff's amendment and entered judgment in Elan Corp's favor.  Dkt. Nos. 175, 187.  Plaintiff appealed to the Seventh Circuit, which reversed and ordered this Court to permit Defendant to be substituted for Elan Corp.  *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 561 (7th Cir. 2011).  Following remand, the parties filed the present Motions seeking summary judgment.  Dkt. Nos. 232, 234.

The Court includes additional facts below as necessary.

## II.  LEGAL STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a material fact is genuinely disputed.  FED. R. CIV. P. 56(c)(1).  A genuine dispute of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine dispute of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence.  *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable

inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III.  DISCUSSION

### A.  EVIDENTIARY OBJECTIONS

Throughout their briefing in this matter, the parties have lodged a number of evidentiary objections, contending that certain pieces of evidence submitted by the opposing party should not be considered in deciding summary judgment.  Summary judgment must be based on admissible evidence.  *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).  Therefore, the Court first addresses the parties' evidentiary objections.

7

In its response, Defendant contends that Plaintiff's exhibits A, E, and G are unauthenticated and, therefore, inadmissible.  Exhibit A purports to be a collection of materials submitted in support of Wardrop's petition for a United States Visa.  *See generally* dkt. nos. 235-2, 235-3.  Exhibit E purports to be the official box score of the 2000 Indianapolis 500.  *See generally* dkt. no. 235-7.  Exhibit G purports to be a number of documents from Treadway Racing indicating salary payments made to Wardrop.  *See generally* dkt. no. 235-9.  Included with all the exhibits is an affidavit from James Fisher, Plaintiff's attorney in this matter, indicating that the exhibits are "true and accurate cop[ies]" of what they purport to be.  Dkt. No. 235-1 ¶¶ 2, 6, 8.

As to Exhibits A and E, the Court concludes that they are irrelevant to the present Motions.  These documents address Wardrop's skill and experience as a racing engineer, and while that information may have been relevant between the parties in the negotiating the terms of the Employment Agreement, that information does not inform the Court's interpretation of the agreement in any way.  As such, the Court will not consider Exhibits A and E in deciding the Motions.

As for Exhibit G, in response to Defendant's objections, Plaintiff provided an affidavit from Jerry Weaver at Treadway Racing authenticating the documents as business records.  *See* dkt. no. 249-2; *see also* Fed. R. Evid. 803(6).  The Court concludes that Exhibit G is admissible and may be considered in deciding the Motions.

Additionally, Defendant seeks to strike errata included with Wardrop's deposition as impermissible material changes to his testimony.  *See* dkt. no. 233-1 at 80–82.  The Federal Rule of Civil Procedure permit a witness to make changes via errata by signing a statement detailing the changes and the reason for making them.  Fed. R. Civ. P.

8

30(e)(1)(B).  However, "a change in substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).  As motions to strike are disfavored on summary judgment, *see* S.D. Ind. L.R. 56-1(i), the Court declines to strike the errata at this time.  However, to the extent Wardrop attempts to make impermissible substantive changes to his deposition testimony, the Court will disregard such changes.  *Accord. Thorn*, 207 F.3d at 389.

Lastly, Plaintiff contends that Panoz's March 2012 declaration should be disregarded as contradictory of his previous deposition testimony.  *Compare* dkt. no. 244-2, *with* dkt. no. 244-3.  Where a subsequent affidavit or declaration contradicts deposition testimony, the affidavit is to be disregarded "unless it is demonstrable that the statement in the deposition was mistaken, perhaps . . . because a lapse of memory is in the circumstances a plausible explanation for the discrepancy."  *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995).  In his 2009 deposition, Panoz stated that he did not remember specifics of his conversations with Wardrop, specifically regarding "the terms under which he would be hired."  Dkt. No. 244-3 at 3.  In his declaration, Panoz states that "[a]t no time . . . did I offer a contract . . . or agree to a contract with Timothy Wardrop, which would provide Timothy Wardrop with 10% of sales of any product, including any chassis sold or to be sold by EMT or any other person or entity."  Dkt. No. 244-2 ¶ 2.  It is plausible that Panoz could have remembered aspects of his discussions with Wardrop in the three years between his deposition and his declaration.  Therefore, the Court concludes that Panoz's affidavit need not be ignored in evaluating the Motions; rather, it will be considered with all other admissible evidence.  *Accord. Russell*, 51 F.3d at 68.

## B. LAW OF THE CASE DOCTRINE

Plaintiff contends that Defendant's arguments are precluded by the "law of the case" doctrine.  Specifically, Plaintiff argues that the Court's 2005 SJ Order already decided the issues of statute of limitations, statute of frauds, and merger, and Defendant cannot reargue those issues following remand from the Seventh Circuit.

The law of the case doctrine provides that when a court decides on a rule of law, that decision governs throughout subsequent stages of the same case.  *Arizona v. California*, 460 U.S. 605, 618 (1983).  The law of the case doctrine is largely a matter of judicial discretion, and the Court may depart from a prior holding "if convinced that it is clearly erroneous and would work a manifest injustice."  *Id.* at 618 n.8.  In other words, the law of the case doctrine works as a presumption but not a "straightjacket."  *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1999).  However, once the Court of Appeals has decided the merits of a ground of appeal, that decision becomes binding law of the case for subsequent district court proceedings.  *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986).

During briefing for the 2005 SJ Order, the previous defendant raised arguments based on statute of limitations, statute of frauds, and merger.  *See generally* dkt. nos. 39–40, 52.  In the 2005 SJ Order, the Court concluded that there was no question of material fact that the parties intended the oral and written agreements taken together to form the Employment Agreement between the parties.  Dkt. No. 53 at 5.  Because a contract containing both oral and written terms is considered an oral contract under Indiana law, the Court further concluded that the two-year statute of limitations for oral contracts applies.  *Id.* at 6 (citing *Majd Pour v. Basic Am. Med., Inc.*, 555 N.E.2d 155, 158 (Ind. Ct.

10

App. 1990)).  The Court concluded that there existed a genuine issue of material fact as to when Wardrop knew or should have known of any breach of the Employment Agreement.  *Id.* at 7.  Following a motion for reconsideration, the Court further concluded that the statute of frauds does not apply to the oral portion of the contract because it could have been performed within one year.  Dkt. No. 58 at 1.  No judgment was entered based upon these conclusions,[3] and these issues were not presented to the Seventh Circuit on appeal.  *See generally Joseph*, 638 F.3d 555.

Turning to Defendant's current arguments, the Court concludes that Defendant's statute of frauds argument is precluded by the law of the case doctrine.  Whether the statute of frauds has been satisfied is a question of law.  *Pepsi-Cola Co. v. Steak 'N Shake, Inc.*, 981 F. Supp. 1149, 1159 (S.D. Ind. 1997) (Barker, C.J.).  In the December 2005 Order, the Court definitively ruled that the statute of frauds did not apply to the oral portions of the Employment Agreement.  Dkt. No. 58 at 1.  This conclusion was not challenged on appeal.  Defendant contends that Wardrop testified in his deposition that the oral agreements were made for three years, undermining the Court's conclusion.  Dkt. No. 233 (citing Wardrop Dep. at 169–76).  However, Wardrop stated in the deposition that his intent was that "[i]n the event I entered into an employment agreement with [Defendant], the oral agreement will continue through the duration of my employment."  Dkt. No. 235-10 at 18.  In other words, the continuance of the oral agreement was conditioned on the subsequent written agreement, which could have occurred within one year.  The Court concludes that its previous statute of frauds conclusion is not clearly erroneous and, under the law of the

---

[3]  Judgment was entered in favor of Defendant as to claims under the Indiana Wage Payment Statute, but that Judgment is not at issue here.  *See* dkt. no. 53 at 7 n.1.

case doctrine, should stand.  *Accord. Avilia*, 49 F.3d at 1227.

Additionally, the Court concludes that Defendant's merger argument is precluded by the law of the case doctrine.  Defendant contends that Plaintiff's commissions claim fails because it is merged into the written portion of the contract, which is presumed to embody the entire agreement between the parties.  Dkt. No. 233 at 26.  However, the Court concluded in the 2005 SJ Order that the Employment Agreement consists of both oral and written terms.  Dkt. No. 53 at 5.  In essence, the 2005 SJ Order recognizes that there are oral contract terms that are not merged into the written portion of the Employment Agreement.  The Court concludes that this previous decision is not clearly erroneous and, therefore, should stand under the law of the case doctrine.  *See Avitia*, 49 F.3d at 1227.

However, as to the statute of limitations issue, the Court concludes that the law of the case doctrine applies but does not preclude Defendant's current arguments.  The Court previously concluded that the two-year statute of limitations applies to the Employment Agreement at issue in this case—dkt. no. 53 at 6—and Defendant does not challenge this legal conclusion.  The Court made no factual findings as to whether Plaintiff's claims fell within the statute of limitations, concluding that genuine issues of material fact rendered this a jury question.  *Id.*  The Seventh Circuit's review of this case did not address whether Plaintiff brought his claim within the statute of limitations, as there were no factual findings to review addressing this question.  *Joseph*, 638 F.3d at 558.  In short, because whether Plaintiff's claims have been brought within the limitations period is a question of fact, not law, and no definitive factual finding has been made on it previously, the Court concludes that Defendant's current statute of limitations argument is not precluded by the law of the case doctrine.

12

## C.  STATUTE OF LIMITATIONS

As discussed above and in the 2005 SJ Order, all of Plaintiff's claims are subject to the two-year statute of limitations applicable to oral contracts in Indiana.  In the 2005 SJ Order, the Court concluded that a genuine issue of material fact existed as to when Plaintiff knew or should have known of Defendant's breach of the employment agreement.  Dkt. No. 53 at 7.  In reaching this conclusion, the Court noted that the employment agreement did not include any provisions detailing when Wardrop would be paid.  *Id.* at 6–7.  Defendant contends that, in light of the deposition testimony of Wardrop and Keeler, there is no longer a genuine issue of material fact that Plaintiff knew of Defendant's breach no later than December 15, 2001.

For a breach of contract action, the statute of limitations begins to run when Plaintiff knew or should have known that Defendant breached the contract.  *Meisenhelder v. Zipp Express, Inc.*, 788 N.E.2d 924, 929–30 (Ind. Ct. App. 2003).  When the contract includes payment provisions without a specified time for payment, the statute of limitations does not begin to run until a "reasonable time for performance" has lapsed.  *Lightle v. Harcourt Mgmt. Co.*, 634 N.E.2d 858, 861–62 (Ind. Ct. App. 1994) (quoting *Rees v. Heyser*, 404 N.E.2d 1183, 1188 (Ind. Ct. App. 1980)).  Determining a "reasonable time for performance" is a fact question for a jury.  *Rees*, 404 N.E.2d at 1188.  In this case, the parties have introduced evidence about previous course of payment and the parties' understanding of when payment would occur, evidence which could result in a finding for either party on the statute of limitations issue.  Therefore, the Court concludes that there still exists a genuine issue of material fact as to when the statute of limitations began to run in this matter.

13

## D.  TERMS OF THE CONTRACT

Apart from the general arguments as to statute of limitations and the law of the case doctrine, which apply to the entire contract, the parties focus their attention on two specific provisions of the Employment Agreement: the Commissions Term and the Share Option Term.  The Court addresses each term in turn.

### 1.  COMMISSIONS TERM

The Commissions Term is included in the oral provisions of the Employment Agreement.  Wardrop contends that during the June 1999 meeting with Panoz, Panoz agreed that Defendant would pay Wardrop a ten percent commission on sales.  Dkt. No. 235-10 at 4, 7; *see also* dkt. no. 235-11 at 7, 9.  Panoz contends that no such agreement was made.  Dkt. No. 244-2 ¶ 2.  Early drafts of the written portion of the Employment Agreement include references to possible commissions, but the final signed written portion does not mention commissions.  *Compare* dkt. nos. 233-3 ¶ 6; 233-4 ¶ 6; 233-7 ¶ 6, *with* dkt. no. 1-1.  The parties agree that Wardrop was not paid any commissions.

When a contract contains oral terms, in whole or in part, interpretation of the oral terms is a question of fact for the jury to decide.  *Ballew v. Town of Clarksville*, 683 N.E.2d 636, 639 (Ind. Ct. App. 1997); *see also Annadall v. Union Cement & Lime Co.*, 74 N.E. 893, 894 (Ind. 1904).  The fact finder is responsible for determining whether an oral term exists and, if so, what its perimeters are.  *See Bump v. McGrannahan*, 111 N.E. 640, 642 (Ind. Ct. App. 1916).  Plaintiff has brought forth evidence that Panoz offered Wardrop a ten percent commission on sales.  *See* dkt. no. 235-11 at 7, 9.  Defendant has brought forth evidence that Panoz did not make such an offer and Defendant continued to resist

14

Wardrop's request for commissions.  *See* dkt. nos. 244-2 ¶ 2; 233-3 ¶ 6; 233-4 ¶ 6.  In short, both parties have brought forth sufficient evidence for a jury to determine that their version of events is correct, and the Court is not in a position to resolve the conflict between such witness testimony.  *Anderson*, 477 U.S. at 249; *see also United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1987).  The Court concludes that there is a genuine dispute of material fact as to whether the parties agreed on the Commissions Term and its contents and, therefore, **DENIES** both parties' requests for summary judgment on the Commissions Term.

## 2.  SHARE OPTION TERM

The Share Option Term of the Employment Agreement states, "As part of a bonus incentive program, EMT will offer Wardrop a company share option package to be determined and detailed in an addendum to this agreement."  Dkt. No. 1-1 ¶ 5.  Wardrop testified in his deposition that Burton indicated that the proposed share package would have a predicted value of two to three million dollars, with a minimal value of one million dollars.  Dkt. No. 235-10 at 15–16.  The parties agree that no share option package was ever negotiated and Wardrop received no shares.  The parties also agree that none of Defendant's other employees received an ownership interest in Defendant.

When examining written contract provisions, the primary goal of contract interpretation under Indiana law is to give effect to the parties' intent.  *See Trs. of First Union Real Estate Equity & Mortg. Invs. v. Mandell*, 987 F.2d 1286, 1289 (7th Cir 1993).  When the terms of a contract are clear and unambiguous as written, those terms are conclusive as to the contract's meaning and may be interpreted as a matter of law.  *See*

15

*In re Forum Grp., Inc.*, 82 F.3d 159, 163 (7th Cir. 1996).  Clear and unambiguous terms are to be given their ordinary meaning without referral to extrinsic evidence.  *Id.*  If a contract term is ambiguous, the intent of the parties is a question for the trier of fact and may be determined using extrinsic evidence.  *See Roy A. Miller & Sons*, 775 N.E.2d at 1173.

The parties agree that the Share Option Term as set forth in the written portion of the Employment Agreement is an "agreement to agree" and thus unenforceable on its own.  *See* dkt. nos. 233 at 29–30, 242 at 21.  The Court cannot create a contract for the parties or insert language into an existing contract.  *Gen. Motors Corp. v. Northrup Corp.*, 685 N.E.2d 127, 135 (Ind. Ct. App. 1997).  Apart from the written portion of the Employment Agreement, Plaintiff's only evidence of the Share Option Term is the purported statement from Burton as to the predicted value of a share option package.  Dkt. No. 235-10 at 15–16.  However, such a prediction is not a sufficient promise for a binding contractual obligation.  *Sec. Bank & Trust Co. v. Bogar*, 494 N.E.2d 965, 969 (Ind. Ct. App. 1986).  There is no evidence on the record sufficient for a jury to find that an enforceable Share Option Term within the Employment Agreement.  Therefore, the Court **GRANTS** summary judgment to Defendant on the portions of Plaintiff's breach of contract claim concerning the Share Option Term.

Having excised the Share Option Term from the Employment Agreement, the Court now must determine whether the remaining written portions of the Employment Agreement are enforceable.  Plaintiff contends that the Share Option Term is not severable and, because the Share Option Term represented the main consideration for the written portion of the Employment Agreement, its invalidity in turn renders the entire written portion unenforceable.  To determine whether a contractual provision is severable, the Court

16

considers "the entirety or divisibility of the consideration." *Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 891 (Ind. Ct. App. 2002) (quoting *Samper v. Ind. Dep't of State Revenue*, 106 N.E.2d 797, 802 (Ind. 1952)).  Like other questions of contract interpretation, the severability question depends largely on the intent of the contracting parties.  *Id.*  If the primary purpose of the contract is not frustrated by eliminating the unenforceable term, the unenforceable term may be severed without undermining the enforcement of other contractual provisions.  *See Harbour v. Arelco, Inc.*, 687 N.E.2d 381, 385 (Ind. 1997).

In this case, the Court concludes that the Share Option Term is severable from the Employment Agreement as a whole.  Wardrop admitted in his deposition that the Share Option Term "was just something that these rich gentlemen think is a good idea at the time" and "peripheral to" the Employment Agreement.  Dkt. Nos. 244-1 at 19; 233-1 at 5.  The primary purpose of the Employment Agreement was to secure Wardrop's services on behalf of Defendant.  Apart from the Share Option Term, the written portion of the Employment Agreement includes a number of incentives to Wardrop, including at least $300,000.00 per year in salary, an expense program, and the maintenance of an office for Wardrop's use.  Dkt. No. 1-1 ¶¶ 2–4, 6.  Consideration is a "benefit" to one of the contracting parties; that is, "a legal right given to the promisor to which the promisor would not otherwise be entitled." *Warner v. Estate of Allen*, 776 N.E.2d 422, 428 (Ind. Ct. App. 2002).  Absent the Share Option Term, the written portion of the Employment Agreement still gave Wardrop a legal right to payments for expenses and other benefits to which he was not previously entitled, and thus consideration was present.  *Accord. id.*  Plaintiff's unhappiness with the terms of the written portion of the Employment Agreement absent the

17

Share Option Term does not render the consideration for the written portion inadequate. *See id.* (noting that courts "[g]enerally . . . will not inquire into the adequacy of consideration"). The Court concludes that severance of the Share Option Term does not frustrate the primary purpose of the written portion of the Employment Agreement, which is otherwise supported by consideration, and severs the Share Option Term as such. *Accord. Harbour*, 687 N.E.2d at 385.

### 3.  SALARY AND EXPENSES

As discussed above, the Court concludes that there is a genuine dispute of material fact as to whether Plaintiff's claim for unpaid salary and expenses was brought within the applicable statute of limitations. Therefore, the Court concludes that neither party is entitled to summary judgment on Plaintiff's salary and expense claims at this time and declines to further discuss the merits of these claims.

## <u>IV.  CONCLUSION</u>

For the reasons set forth herein, the Court makes the following rulings:

1)  Defendant's Motion for Summary Judgment [Dkt. No. 232] is **GRANTED in part** and **DENIED in part**.  Specifically, Defendant is **GRANTED** summary judgment as to Plaintiff's claims based upon the Share Option Term and **DENIED** summary judgment as to all other claims.

2)  Plaintiff's Motion for Summary Judgment [Dkt. No. 234] is **DENIED** in its entirety.

3)  Plaintiff's Requests for Oral Argument on Summary Judgment Motions [Dkt Nos. 239, 243] are both **DENIED**.

IT IS SO ORDERED this 24th day of July, 2012.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

Thomas A. Brodnik
DONINGER TUOHY & BAILEY LLP
tbrodnik@dtblegal.com

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com

Richard A. Kempf
TAFT STETTINIUS & HOLLISTER LLP
rkempf@taftlaw.com

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

John J. Moore
DONINGER TUOHY & BAILEY LLP
jmoore@dtblegal.com

Peter Jon Prettyman
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com