UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENICE GOLSEN-DUNLAP, *Trustee in Bankruptcy for the Estate of Timothy Wardrop*,<br><br>               Plaintiff,<br><br>    vs.<br><br>ELAN MOTORSPORTS TECHNOLOGIES, INC.,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:04-cv-00104-LJM-DKL<br>)<br>)<br>)<br>)<br>) |

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION**

Pending before the Court is Defendant Elan Motorsports Technologies, Inc.'s ("Defendant's"), Motion for Partial Reconsideration of Order on Second Motion for Summary Judgment and Request for Oral Argument ("Motion") [Dkt. No. 256]. Defendant requests that the Court reconsider its conclusions set forth in its July 24, 2012, Order [dkt. no. 251] as to Defendant's merger arguments.[1] The Court has considered the parties' arguments and **GRANTS** Defendant's Motion [dkt. no. 256].

**I. BACKGROUND**[2]

The present Motion continues a contract dispute between Defendant and plaintiff ("Plaintiff"), Jenice Golsen-Dunlap, the bankruptcy trustee for Timothy Wardrop ("Wardrop"). Plaintiff contends that Wardrop is owed certain commissions on the basis

---

[1] The Court **DENIES** Defendant's request for an oral argument as the written record on the merger issue is sufficient for the Court to issue a ruling.
[2] The factual background of this case is set out in greater detail in the Court's July 24, 2012, Order addressing the parties' arguments for summary judgment. *See generally* dkt. no. 251 at 2–5.

1

of an employment contract ("Employment Agreement") between himself and Defendant. Beginning in 1999, Wardrop, a well-known and respected Indy Car engineer, was employed by Defendant, a manufacturer of Indy Car chassis. Dkt. No. 251 at 1–2.

In May 1999, a meeting took place at the Indianapolis Motor Speedway between Wardrop, Fred Treadway ("Treadway"), and Dan Panoz ("Panoz"), who was in the process of purchasing Defendant and related corporate entities. *Id.* at 2. At this meeting, Panoz agreed to assume Wardrop's salary payments from Treadway for the rest of 1999 pending a more formal employment agreement between Wardrop and Defendant. *Id.* No writing resulted from this meeting.

In June 1999, Wardrop and Panoz had a meeting in Georgia to discuss Wardrop's employment with Defendant. *Id.* Wardrop contends that during this meeting, Panoz proposed to give Wardrop a ten percent commission on sales in addition to his salary. *Id.*; *see also* dkt. nos. 233-1 at 5; 235-11 at 5. Panoz denies that he made any representation as to a commission. Dkt. No. 251 at 2; *see also* dkt. no. 244-2 ¶ 2. The results of the June 1999 meeting were not reduced to writing, and Panoz delegated the negotiation of the details of the agreement to others. Dkt. No. 251 at 2.

After the June 1999 meeting, Wardrop enlisted the help of Steven Keeler ("Keeler"), a business associate, to negotiate a written agreement between Wardrop and Defendant to begin in 2000. *Id.* at 3. Keeler described his role in the negotiations as discussing "all the issues that were on the table: salary, tenure, bonuses, commissions, those kinds of things." *Id.*; *see also* dkt. no. 233-2 at 11. Discussions between the parties occurred throughout late 1999 and early 2000. Dkt. No. 251 at 3.

On February 1, 2000, Wardrop signed a document resulting from the negotiations between Keeler and Defendant's representatives. *Id.* The document includes provisions for salary, expenses, and potential share options. *Id.* That document does not mention a commission, nor does it include a merger or integration clause. *Id.*; *see also* dkt. no. 1-1 at 7–8. Wardrop continued to work for Defendant until 2002, but Defendant never paid him a commission. Dkt. No. 251 at 4.

On December 15, 2003, Wardrop filed suit for breach of contract, seeking unpaid salary, share options, expenses, and commissions. Dkt. No. 1-1. On November 10, 2005, the Court issued its first Order on Summary Judgment, concluding that a single Employment Agreement, consisting of both oral and written terms and subject to a two-year statute of limitations, existed between Wardrop and Defendant. Dkt. No. 53 at 7. Subsequently, the case was appealed to the Seventh Circuit on a procedural matter and remanded to this Court for consideration of the merits. Dkt. No. 251 at 5.

On July 24, 2012, the Court issued a second Order addressing the parties' requests for summary judgment. *See generally* dkt. no. 251. The parties raised many of the same arguments previously raised in conjunction with the November 2005 summary judgment. *Id.* at 10. In particular, Defendant argued that any commission term had been merged into the written portion of the Employment Agreement by virtue of the 1999–2000 negotiations. Dkt. No. 233 at 26. The Court concluded that its previous determination that unmerged oral contract terms existed should stand as law of the case and precluded Defendant's merger argument. Dkt. No. 251 at 12. The Court further concluded that there existed a genuine dispute as to whether the parties agreed on an oral commission term and, if so, the exact parameters of that term. *Id.* at

3

14–15.  Defendant seeks reconsideration of this determination and requests that the Court find that the doctrine of merger precludes any cause of action based on a commission term.  *See generally* dkt. no. 256.

The Court includes additional facts below as necessary.

## II.  LEGAL STANDARD

Motions to reconsider interlocutory orders are governed by Rule 54(b), which provides that:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revisited at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liability.

F ED. R. C IV. P. 54(b).  Pre-judgment interlocutory decisions may be reconsidered at any time.  *See In re 949 Erie St., Racine, Wis.*, 824 F.2d 538, 541 (7th Cir. 1987); *Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir. 1986).  Under the "law of the case" doctrine, the Court may refuse to consider that which has already been decided.  *See Cameo Convalescent Ctr.*, 800 F.2d at 110.  However, the Court has "the discretion to make a different determination of any matters that have not been taken to judgment or determined on appeal."  *Id.*  A motion to reconsider must be based on the need "to correct manifest errors of law or fact or to present newly discovered evidence."  *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).  "A 'manifest error' is not demonstrated by the disappointment of the losing party.  It is the wholesale disregard, misapplication, or failure to recognize controlling

precedent.'"  *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

### III.  DISCUSSION

Defendant contends that the Court's previous decision barring its merger arguments under the law of the case doctrine was clearly erroneous and should be reconsidered to allow Defendant to argue that the doctrine of merger precludes any of Wardrop's claims for commissions.  Plaintiff contends that the law of the case doctrine properly counsels against reconsideration of the Court's July 24, 2012, Order.

"This Court's orders are not 'mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'"  *Dennerline v. Pronational Ins. Co.*, No. 1:05-cv-4564, 2006 WL 1344059, at *1 (S.D. Ind. May 16, 2006) (citing *Quaker Alloy Casting Co. v. Gulfco. Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1985)).  In other words, the Court may, at its discretion, decline to revisit interlocutory rulings in the interest of judicial economy and efficiency.  *See id.*; *see also Cameo Convalescent Ctr.*, 800 F.2d at 110.  However, this discretionary aspect of the law of the case doctrine does not function as a straitjacket, and the Court is free to reconsider an interlocutory ruling when it "has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that benefited from it."  *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995).

The Court's previous Orders make clear, and Defendant implicitly acknowledges, that the written portion of the Employment Agreement is not a fully integrated contract.  *See* dkt. nos. 251 at 15; 256 at 13-14; 260 at 5.  However, the Court has never explicitly

5

decided whether the commission term individually is integrated into the written portion of the Employment Agreement. The parties addressed the integration question extensively in summary judgment briefing. *See generally* dkt. nos. 233–35, 242, 244, 247, 249–50. The Court concludes that it is appropriate to address integration as specific to the commission term at this time.

Contract integration is a question for the Court. *See Franklin v. White*, 493 N.E.2d 161, 166 (Ind. 1986). When determining whether a particular alleged oral provision is integrated into a written instrument, the Court must ask "whether the nature of the collateral agreement was such that, if the parties had agreed to it, they would naturally have included it in their writing." *Hinkel v. Sataria Dist. & Packaging, Inc.*, 920 N.E.2d 766, 769 (Ind. Ct. App. 2010) (citing 11 WILLISTON ON CONTRACTS § 33:25). Although an integration clause provides insight into the parties' intent, such a clause is not necessary for the Court to find a provision integrated. *Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 162 n.7 (Ind. 2005) (Boehm, J., concurring and dissenting). The Court may use parol evidence in its integration determination. *Franklin*, 493 N.E.2d at 167. "If the Court determines that the writing is integrated as to a specific term, then prior statements or negotiations of the parties which would tend to contradict that term as it appears in their final written expression are simply irrelevant." *Id.*

The written portion of the Employment Agreement does not include an integration clause. Dkt. No. 1-1. However, examination of the written portion of the Employment Agreement, combined with parol evidence of the negotiations underlying the written portion, convinces the Court that any oral term regarding commission is integrated. Wardrop's alleged initial agreement on commissions—ten percent of "sales"—provides

little, if any, detail as to how commissions would be calculated or paid and left the "details" to future negotiations. Dkt. No. 233-1 at 18. Keeler and Defendant's representatives negotiated a number of detailed commission proposals. *See* dkt. nos. 233-1 at 20–21; 233-2 at 5–6, 21–24, 26–29, 36–37, 46–48, 69–73; 233-6 at 10–12; 233-8 at 8–9; s*ee also* dkt. nos. 233-3, 233-4, 233-5, 233-7, 233-9. In the proposals, the amount of commission appears inversely proportional in some way to the amount of salary (i.e. the proposed commission percentage was decreased when the proposed salary increased). *See id.*

In the final written portion of the Employment Agreement, setting forth everything that the parties "ultimately agreed" to, no commission term appears, but the Employment Agreement contains the highest salary ever proposed. Dkt. No. 1-1; *see also* dkt. no. 233-2 at 9. Given the size and alleged importance of a commission and the inverse connection between commission and salary in the numerous proposals leading up to the Employment Agreement, the Court concludes that the parties would have "naturally included" a commission term in the written portion of the Employment Agreement had they agreed to it. *Accord Hinkel*, 920 N.E.2d at 769. The Court concludes that the written portion of the Employment Agreement is partially integrated, and the commission term is fully integrated. As such, no evidence addressing prior statements or negotiations may be used to reintroduce a commission term. *Accord Franklin*, 493 N.E.2d at 167.

## IV.  CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Defendant's Motion for Partial Reconsideration on Second Motion for Summary Judgment, but **DENIES** Defendant's Request for Oral Argument [Dkt. No. 256].  Defendant is **GRANTED** summary judgment as to Plaintiff's claim for commissions.

IT IS SO ORDERED this 20th day of November, 2012.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

John J. Moore
DONINGER TUOHY & BAILEY LLP
jmoore@dtblegal.com

Thomas A. Brodnik
DONINGER TUOHY & BAILEY LLP
tbrodnik@dtblegal.com

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com

Geoffrey G. Slaughter
TAFT STETTINIUS & HOLLISTER LLP
gslaughter@taftlaw.com

Peter Jon Prettyman
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com

Richard A. Kempf
TAFT STETTINIUS & HOLLISTER LLP
rkempf@taftlaw.com

Jeffrey Martin Bellamy
THRASHER BUSCHMAN GRIFFITH & VOELKEL
bellamy@indiana-attorneys.com

Steven Christopher Earnhart
THRASHER BUSCHMANN GRIFFITH & VOELKEL
earnhart@indiana-attorneys.com